**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 98-4568

KEVIN MICHAEL KEY,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 98-4582

ROBERT ANTHONY KEY,
Defendant-Appellant.

Appeals from the United States District Court
for the Middle District of North Carolina, at Durham.
Frank W. Bullock, Jr., Chief District Judge.
(CR-98-48)

Submitted: March 23, 1999

Decided: April 6, 1999

Before ERVIN and MOTZ, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Louis C. Allen, III, Federal Public Defender, Eric D. Placke, Assistant Federal Public Defender, Matthew K. Rogers, Clinical Student, Greensboro, North Carolina; David B. Freedman, Laurie A. Schlossberg, WHITE and CRUMPLER, Winston-Salem, North Carolina, for Appellants. Walter C. Holton, Jr., United States Attorney, Michael F. Joseph, Assistant United States Attorney, Jason E. Moss, Third-Year Law Student, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellants Kevin Michael Key and Robert Anthony Key appeal their convictions and sentences for the kidnapping of Harvey Peoples for the purpose of gaining transportation from Winston-Salem, North Carolina, to New York City, in violation of 18 U.S.C. § 1201(a)(1) (1994). Michael Key was also convicted for carrying and using a firearm during and in relation to the kidnapping, in violation of 18 U.S.C.A. § 924(c) (West 1994 & Supp. 1998). Both Kevin and Robert Key allege that the Government violated 18 U.S.C.§ 201(c)(2) (1994) by promising an alleged accomplice assistance in exchange for his testimony against them, that their convictions for kidnapping were not supported by the evidence, and that the district court erred by denying Appellants a one-level sentencing reduction for release of the victim. Kevin Key also alleges that insufficient evidence existed to support his conviction on the firearm charge. Finding no error, we affirm.

The Appellants and Gregory Love traveled together from New York City to Winston-Salem, North Carolina. Once in Winston-Salem, a female friend of Robert Key contacted Harvey Peoples to give Appellants and Love a ride to the bus terminal. Peoples occa-

2

sionally would act as a driver for hire. On July 21, 1997, Peoples picked up the Appellants and Love in his car.

The Appellants had Peoples drive them first to an apartment where Kevin Key exited the car and approached the apartment. He returned when no one answered the door. Peoples then observed that Kevin Key had a nine millimeter gun and Robert Key had a shotgun. Love testified that Robert Key chambered the shotgun. Peoples testified that Robert put a shotgun to his back and kept it there. Peoples testified that the Appellants started threatening him so that he would drive the whole way to New York City. Peoples protested and said that he had to pick his children up from school. Kevin Key asked Peoples if he prayed to God that he would not get shot in the head. Love testified that Peoples was shaking and very nervous. Peoples drove the group to New York City. The Appellants allowed him one bathroom stop at a gas station, and Love accompanied Peoples into the restroom with a handgun. Peoples was also allowed to purchase wine "to get (his) nerves together." Love testified that Appellants allowed Peoples to stop one more time to relieve himself on the side of the road. While Peoples was outside the car, Appellants discussed whether they should kill Peoples and take his car.

At a gas stop in New Jersey, Appellants observed a police car near the gas pumps. Kevin Key warned Peoples to remain quiet and threatened violence. As Peoples drove toward New York, he deliberately took the wrong roads so that he came back through the same toll booth three times in hopes that the attendant would recognize his situation. After the third pass through the toll booth, both Appellants threatened Peoples.

Once the group arrived in New York City, Robert Key took over the driving. While in New York, they made several stops. Peoples asked Robert Key if they could stop at a liquor store to purchase a bottle of gin. Key obliged and Peoples shared the gin with others in the car. Peoples testified that he hoped Appellants would lose control of the situation by drinking the gin. The Appellants gave Peoples approximately eighty dollars and planned to drop him off at the bus station and keep Peoples' car. While stopped at a red light, Peoples saw police officers nearby and jumped out of the car, and approached

3

the police car to explain his situation. The Appellants drove away when Peoples escaped.

Appellants first allege that the testimony of Government witness Gregory Love should have been suppressed because it was made in exchange for something of value in violation of 18 U.S.C. § 201(c)(2). Appellants did not object to this alleged error at trial; therefore, it is evaluated under the plain error standard. See Fed. R. Crim. P. 52(b). The plain error standard requires proof that there is an error that is clear and obvious under existing law. See United States v. Castner, 50 F.3d 1267, 1277-78 (4th Cir. 1995). Appellants only rely upon a panel decision of the Tenth Circuit, which was recently rejected and vacated en banc in United States v. Singleton, 144 F.3d 1343 (10th Cir. 1999), and a district court decision to support his claim of error. There is no valid precedent in this or any circuit court to uphold this argument, and a number of circuits have rejected it. See, e.g., United States v. Haese, 162 F.3d 359 (5th Cir. 1998); United States v. Ware, 161 F.3d 414 (6th Cir. 1998). If there was an error, it is not plain and obvious under existing law because no Supreme Court or circuit court opinion stands to support that position. Therefore, Appellants are not entitled to relief on this claim.

Next, Appellants argue that their convictions are not supported by sufficient evidence and therefore the district court erred in denying their motions for judgment of acquittal. We sustain a conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt based upon the evidence in the light most favorable to the government. See Glasser v. United States, 315 U.S. 60, 80 (1942). The uncorroborated testimony of a single witness may be sufficient, even if that witness is an accomplice. See United States v. Manbeck, 744 F.2d 360, 392 (4th Cir. 1984). Credibility determinations are strictly a matter for the trier of fact, and will not be reviewed on appeal. See United States v. Johnson, 55 F.3d 976, 979 (4th Cir. 1995).

To sustain a conviction under the federal interstate kidnapping statute, the government must satisfy four essential elements: "(1) the transportation in interstate commerce; (2) of an unconsenting person who is; (3) held for ransom, reward or otherwise, and (4) the acts were committed knowingly and willingly." United States v. Osborne,

4

68 F.3d 94, 100 (5th Cir. 1995). To sustain a conviction under 18 U.S.C.A. § 924(c), the government must prove that the defendant used or carried a firearm during and in relation to a crime of violence. See Smith v. United States, 508 U.S. 223, 228 (1993).

The testimony of Peoples and Love adequately prove the kidnapping convictions for both Appellants and the firearm conviction for Kevin Key. Both witnesses testified that the Appellants used firearms to force Peoples to drive them from North Carolina to New York City. Love testified that Peoples was very nervous and shaking. Both Peoples and Love testified to various threats issued by the Appellants and that Peoples did not willingly consent to drive to New York City. We therefore find that the evidence was sufficient to support the convictions of both Appellants and that the district court did not err in denying their motions for judgment of acquittal.

Both Appellants argue that the district court erred by ruling that Peoples had not been released by them within twenty-four hours and therefore they were not entitled to a one-level reduction for release of the victim. United States Sentencing Guidelines Manual § 2A4.1(b)(4)(C) (1998) provides for a one-point decrease in the offense level "[i]f the victim was released before twenty-four hours had elapsed." Application Note 3 provides that"[f]or the purpose of subsection (b)(4)(C), `released' includes allowing the victim to escape or turning him over to law enforcement authorities without resistance." Both Appellants argue that the district court should have reduced their offense levels by one point pursuant to § 2A4.1(b)(4)(C) because they "allowed" Peoples to escape, he was not restrained at the time, they did not grab for him as he bolted from the car, and they were on the way to the bus station.

In United States v. White, 903 F.2d 457, 465 (7th Cir. 1990), the Seventh Circuit concluded that a defendant must actually acquiesce in the escape if he is to earn a one-point decrease under USSG § 2A4.1(b)(4)(C). We agree--and we do not believe that the district court was required to find acquiescence here. The Appellants' argument requires the court to speculate on the Appellants' intent to release Peoples at the bus station. Peoples testified that at the point that he escaped he was still worried that he would not be released and set free at the bus station, even though he had eighty dollars for bus

fare. Peoples' escape was sudden and unexpected. The record does not reveal that Peoples was free to leave the automobile or the presence of the Appellants at any time. We therefore find that the district court did not err in finding that the Appellants did not release Peoples as defined by USSG § 2A4.1(b)(4)(C).

We therefore affirm the judgments. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6